The first is number 2014-72, Curry v. Commissioner of Social Security. Ms. Gill, are you prepared? Hello, Your Honor. Yes, I'm prepared. Good morning. You may proceed then. Thank you, Your Honor. Your Honors, this presents a pretty simple and straightforward social security case. There are two medical opinions in this record. One comes from well before the relevant time period, and it comes from one of plaintiff's treating physicians, Dr. Lieberg, who opined that plaintiff could sit for less than six hours and stand and or walk for less than two hours in an eight-hour workday, which does not add up to the eight hours required for full-time work. The second opinion, which is the key opinion in this case, came from plaintiff's treating physician, Dr. Cywinski, who treated plaintiff at the time for about ten years that he issued the opinion, and this opinion stated that plaintiff could sit for about two hours and stand and or walk for only about four hours in an eight-hour workday, which, again, does not add up to the eight hours required for full-time work. Dr. Cywinski also opined that the plaintiff would be off task for 30% of his workday. Both of these medical opinions are consistent, and there isn't any contradictory opinion evidence in this file. What is more, the objective evidence supports Dr. Cywinski's opinion. Dr. Cywinski himself cited objective findings of tenderness and positive right-sided straight leg raising, or SLR, tests in support of his opinion. This evidence, as well as other objective evidence, which included worsening findings of MRI studies, supported Dr. Cywinski's opinion. Can you remind me, what exactly is an SLR, this straight leg test? What is it and what does it measure? Yes, Your Honor. The straight leg raising test records one moment, Your Honor. The straight leg raising test, which is sometimes called a root test, is a fundamental maneuver during physical examination of a patient that has lower back pain and a nerve root irritation. A positive SLR indicates the presence of nerve root irritation, and that was borne out by the MRI studies, the most recent of which was from October of 2016, which showed significant displacement of plaintiffs exiting L4 nerve root and also marked bilateral foramenal narrowing on the right at L5-S1. When Dr. Cywinski filled out the form and offered the opinion, he hadn't seen Mr. Curry for six months, right? It does appear that way, Your Honor, yes. There hadn't been a positive straight leg raising result in 20 months before he filled out the form, right? Weren't the two most recent examinations with Dr. Cywinski, didn't they show negative straight leg raising? Yes, Your Honor. The two most recent showed negative straight leg raising, but there were consistent positive right-sided SLRs within the relevant time period after the plaintiff filed his application in 2014. They did show a period of time with those consistent right-sided SLRs that did support Dr. Cywinski. Why couldn't the ALJ focus on the negative straight leg raising results and decide that that showed that Cywinski's opinion was entitled to only partial weight? Well, Your Honor, I would argue that the ALJ stated erroneously that they were overall negative SLR tests and ignored that there really were a number of positive right-sided SLR findings, like Dr. Cywinski stated. So I would argue that the ALJ really did not articulate any reasoning that a defendant gets into in his responding brief that there was some kind of timing of the SLR reasoning. This wasn't advanced by the ALJ within his decision and its post hoc rationalization. The commissioner is really advancing this argument for the first time on appeal. This was not – the ALJ didn't say, you know, the SLR is resolved over time, and therefore I'm going to discredit Dr. Cywinski's opinion for that reason. The ALJ did say that the physical exams have largely found the claimant to have full leg strength in his lower extremities and negative straight leg raising tests and pointed out gaps in the interactions between Dr. Cywinski and Mr. Curry over these years. There were long times in which he did not see Mr. Curry, and he considered those, he said in his decision, as undercutting the strength that Dr. Cywinski's two-page form was due offering this opinion. Why isn't that a reasonable analysis that we should defer to? Well, Your Honor, I would argue that the evidence that the ALJ is citing there is really not functional evidence. There's no indication that full strength findings somehow negate findings of a positive SLR. There's no indication that full strength findings negate the findings of the MRI. And gaps in treatment also really don't provide any insight into what plaintiff's functions actually are. No, but they do tend to undercut the authority of the medical statement, don't they? I would argue that it might go to plaintiff's credibility, but I don't think that it undercuts Dr. Cywinski's expert opinion as to what plaintiff's functional limitations are. But if the doctor hasn't seen the patient frequently in the relevant period, why would one give full credit or controlling credit, indeed, as you argue, his opinion as to various functional levels? Well, Your Honor, I do think that the plaintiff treated with Dr. Cywinski consistently throughout the relevant time period. There were some gaps, yes. But the ultimate question is whether the ALJ properly applied the treating physician rule principles to the evaluation of Dr. Cywinski's opinion, and that was not done here. All right. You've reserved two minutes of rebuttal. We'll hear from the government. Thank you, Your Honor. Thank you. Good morning. Good morning, Your Honors, and may it please the court. My name is Johanny Santana and I represent the commissioner. Here, the ALJ properly exercised his responsibility to consider all of the relevant record evidence to reach an RFC for a range of sedentary work that was supported by substantial evidence and free of legal error. The ALJ's analysis provides meaningful judicial review sufficient for this court to affirm the commissioner under the substantial evidence standard. Really, the sole issue here is whether the ALJ gave good reasons for assigning partial weight to Dr. Cywinski's May 2017 functional assessment when he rejected the physician's sitting and off test limitations because they lacked support and consistency with the record evidence as a whole, but otherwise adopted the rest of Dr. Cywinski's limitations. The RFC's lifting and carrying and by extension pushing and pulling limitations were consistent with Dr. Cywinski's assessed limitations. Dr. Cywinski, could you address here specifically the variability of the sit and stand walk limitations between the Lieber's opinion, Dr. Cywinski's opinion, what the ALJ found? What was the basis for finding that he actually could sit up to six hours and stand or walk up to two hours in a work day? As a threshold issue, your honor, it's not the ALJ's burden to provide proof of the RFC, it's Curry's burden. And here there was sufficient evidence for the ALJ to reasonably determine that Curry could perform sedentary work. When you look at the evidence as a whole, for example, you have, you do have positive straight leg raise testing in 2014 and 2015. But when you consider that with the fact that Curry had significant gaps in treatment, that Curry was recommended epidural injections, and he did not follow through with those injections, that he made contemporaneous statements to his treating sources, that his twice yearly epidurals quote unquote worked well, that his only complaints were some limited range of motion, inability to lift heavy weights, that he was released to a gym for cardio and light stretching. And his own testimony that he had attended addiction and counseling sessions at a facility, a five minute walk, uphill walk from his home that lasted two hours. He testified that he only needed to twist or adjust himself in his seat or take a quick bathroom break in order to sit for two hours, which I'll point you to Social Security ruling 96-9P, sedentary work provides for breaks around the two hour mark, a morning break, a lunch break and an afternoon break. And so when you consider what sedentary work actually requires in terms of the capacity to sit in conjunction with the evidence of record here, the RFC provides substantial evidence that Curry can perform sedentary work, and he has not provided sufficient proof as it is his burden that he was unable to perform sedentary work, which is the commissioner's least exertional of the least of least exertional of the categories. It only requires sitting six hours, standing or walking for two hours and lifting a maximum of 10 pounds. The case, the case law, I believe, requires that the treating physician's opinion gets controlling weight unless the ALG explicitly considers the four Burgess factors. And I don't see where that occurred here. Maybe you can help me out. Yes, Your Honor, I can point you first to the ALG's consideration of Dr. Sawinski's specialty as an orthopedist and the ALG. I'll check off two of them, but it seems to me two of them don't reflect consideration in the record. I believe Your Honor is referring to the supportability and consistency of the opinion. And speaking to those factors, looking at the ALG's discussion of the evidence overall shows that those factors were considered. Here, he summarized the longitudinal evidence that showed. Despite Curry displaying positive straight leg raising and nearly full or full strength, he was still able to function at a level that was inconsistent with his disabling allegations with his allegations of disabling symptoms. And so when the ALG considered that, despite positive MRI findings, for example, the correlating clinical findings by Dr. Sawinski himself showed that plaintiff had no tenderness in the lumbar spine and negative straight leg raise tests. And so when you consider the ALG's discussion of the evidence, it's clear that the ALG was considering whether Dr. Sawinski's opinion was consistent with and supported by the medical evidence. Not only I don't see where the ALG considered the X-ray or MRI imaging results at all and discounting Sawinski's opinion. First, Your Honor, I would note that Dr. Sawinski's opinion was delivered in a checkbox form, which this court has found that is of limited evidentiary value. Despite that, the form did give Sawinski an opportunity to highlight the diagnostic and clinical findings that supported his assessment. And he only noted tenderness in the paraspinal muscles on the right and straight leg race testing on the right. Dr. Sawinski himself did not point to these MRI findings as support for his opinion. But despite that, the ALG did discuss the MRI findings when he summarized the evidence. If you look at transcript page 20 and 21 of the ALG's decision, he discusses, for example, a. At the top of page 21, he discusses the MRI findings showing disc herniations, but he also discusses the correlating clinical findings by Dr. Sawinski at an appointment a couple of days later where Dr. Sawinski finds, again, no tenderness, negative straight leg race testing. And in fact, at that October visit after that MRI, Curry tells Dr. Sawinski that his pain is improved, that he wants nothing further done. And Dr. Sawinski agrees, finding, and I quote, that he is doing well enough at this time to do nothing further. So even though Dr. Sawinski himself did not identify the MRI findings as supportive of his excessively restrictive limitations, the ALG did discuss the diagnostic findings, the MRI findings, again, at the bottom of page transcript 20 and beginning of page 21. And significantly, the correlating clinical findings in that time, both on September 27, 2016 and October 11, 2016, by Dr. Sawinski himself undermine his own opinion. The limitations he assessed were inconsistent with the most recent clinical findings by Dr. Sawinski because his 2017 opinion comes six months after his most recent examination. And when you consider that Dr. Sawinski cited only tenderness in the lumbar spine on the right and positive straight leg race tests, you also have to consider that those findings were over 20 months old and were found by other treating sources and not Dr. Sawinski. Consider those those pieces of evidence that supported the Swinsky's. Yes, yes, he did, Your Honor. And this is why the ALJ limited Curry to an RFC for sedentary work. Again, the least exertional of the of the commissioner's work categories, finding that he was able to perform those functions. And why don't you wrap up, please? Thank you, Your Honor. As this court found in McIntyre, the decision provides an adequate basis for meaningful judicial review, applied the proper legal standards and was supported by substantial evidence. The ALJ considered the longitudinal medical and non-medical evidence showing sporadic and conservative treatment that worked well and contemporaneous statements of functionality, providing substantial evidence that Curry retained an RFC for sedentary work. Thank you, Your Honor. Thank you. We'll hear rebuttal. Thank you. Thank you, Your Honor. I would just like to point out that this is not a case where the ALJ relied on some contradicting opinion evidence. There is no contradicting opinion evidence in this case. The treating physician rule is not the only issue that is presented in this case where the ALJ does what the ALJ did. In this case, there is a particular rule that comes into play, which requires overwhelmingly compelling reasons to be articulated by the ALJ to overcome all of the opinion evidence. Don't the Burgess factors include consideration of the consistency of the opinion with the record as a whole? Why does it have to be another medical opinion? Why can't the ALJ consider whether the checkbox form is consistent with other results of medical examinations, even by the same doctor? Well, Your Honor, I would submit that it's because the case law says that it has to be based on another medical opinion or it has to be based on an articulation of overwhelmingly compelling reasons. And here, the ALJ discussed the MRI findings but didn't discuss that they were worsening. He didn't discuss the displacement of the nerve root and the severe stenosis that was found. If you read the face of the decision and not the record, you really don't get an accurate description of who this patient is. Can you weigh the evidence? I mean, it's possible also to tell a story that says, well, he had these earlier tests that showed positive straight leg raising. Then his most recent ones were negative straight leg raising, and he went without treatment for a long period of time and seemed to be functional. So it is possible to look at the evidence and conclude that the story is one of improvement, isn't it? Well, Your Honor, the most recent treatment note actually came from physician's assistant, Crystal Young. And that was in May of 2017, shortly before the ALJ decided the case. And that found a positive SLR, a positive seated root test on the right side. This finding isn't something that just disappeared with improvement. The MRI studies show that his condition worsened. And this most recent treatment note actually shows that he had the positive SLR in the most recent treatment note. Now, it wasn't from Dr. Cywinski, but the ALJ's characterization of the evidence is still inaccurate. All right. Thank you. I think we have the arguments. We'll take the matter under advisement. Thank you very much. Thank you, Your Honor.